IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

LENNY TURNER,                          :
                                       :
      Plaintiff,                       :
                                       :
vs.                                    :        CIVIL ACTION 11-0177-M
                                       :
MICHAEL J. ASTRUE,                     :
Commissioner of Social Security,       :
                                       :
      Defendant.                       :


<u>MEMORANDUM OPINION AND ORDER</u>


      In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3),

Plaintiff seeks judicial review of an adverse social security

ruling which denied claims for disability insurance benefits and

Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 17).

The parties filed written consent and this action has been

referred to the undersigned Magistrate Judge to conduct all

proceedings and order the entry of judgment in accordance with

28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 22).  Oral

argument was waived in this action (Doc. 24).  Upon

consideration of the administrative record and the memoranda of

the parties, it is **ORDERED** that the decision of the Commissioner

be **AFFIRMED** and that this action be **DISMISSED**.

      This Court is not free to reweigh the evidence or

1

substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was thirty-six years old, had completed some post-high school education (Tr. 34), and had previous work experience as a brick mason and truck driver (Tr. 35-36). In claiming benefits, Plaintiff alleges disability due to hypertension, obesity, asthma, herniated disk with chronic pain, sleep apnea, depression, neck pain, and headaches (Doc. 16).

The Plaintiff protectively filed applications for disability insurance and SSI on November 15, 2007 (Tr. 107-113; *see* Tr. 15). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although he could not perform his past relevant work, Turner was capable of

performing specified jobs in the sedentary job classification (Tr. 15-27). Plaintiff requested review of the hearing decision (Tr. 7-11) by the Appeals Council, but it was denied (Tr. 1-6).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Turner alleges that: (1) The ALJ was biased; (2) the ALJ improperly discounted his testimony; (3) the ALJ failed to complete a Psychiatric Review Technique Form (hereinafter *PRTF*) or incorporate its analysis into his findings; (4) the ALJ made an improper residual functional capacity (hereinafter *RFC*) finding; (5) the ALJ did not properly consider his morbid obesity; and (6) the Appeals Council did not properly consider newly submitted evidence (Doc. 17). Defendant has responded to—and denies—these claims (Doc. 18). The evidence of record follows.

On October 9, 2005, Turner went to Bryan W. Whitfield Memorial Hospital, following an incident in which a bar stool on which he was sitting collapsed under him (Tr. 170-77). Though he complained of back pain, x-rays of the cervical and lumbar spine were normal; Plaintiff refused an injection for his pain, but accepted a Lortab[1] prescription. He was told not to work

---

[1]*Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

until October 11 and discharged, ambulatory with family, in good condition.

On October 18, 2005, Turner went to the American Family Care Medical Center with complaints of pain for which he underwent an MRI which revealed small central disk herniation at L4-5 and L5-S1, though there was no spinal stenosis (Tr. 193; *see generally* Tr. 178-222). Plaintiff began physical therapy (Tr. 202-05). Dr. Thomas A. Stanner, a Neurologist, examined Turner on November 21 and noted complaints of radiating pain, which was mild compared to his low back discomfort; there was "some paresthesia about the right calf, ankle, and foot" along with some minor knee discomfort (Tr. 183). Dr. Stanner's impression was muscular ligamentous discomfort and, perhaps, some mechanical back pain; he did not think that Turner was a surgical candidate, but that he should proceed with conservative therapy (Tr. 184). More intensive rehabilitational medicine was indicated; though the Neurologist was going to keep Plaintiff off of work, he "encouraged him to move around frequently, and not remain sedentary" (*id.*). Turner had been prescribed Anaprox,[2] Flexeril,[3] and Ultram[4] (Tr. 187).

---

[2]*Anaprox* is another name for Naprosyn which "is a nonsteroidal anti-inflammatory drug with analgesic and antipyretic properties" used, *inter alia*, for the relief of mild to moderate pain.

4

Turner was seen by Greystone Neurology & Pain Center, beginning on December 7, 2005 through November 9, 2007 (Tr. 223-86). Dr. Hisham Hakim examined Plaintiff on that first day and found normal muscle tone, adequate strength in the upper and lower extremities, and decreased pinprick sensation in the dorsal and medial aspects of the right foot; there was tenderness in the lumbar and lumbosacral back, mostly on the right (Tr. 266-68). Turner had trouble squatting and bending forward more than sixty degrees; straight leg raising was borderline positive on the right. Hakim's impression was back pain with radiculopathy; his recommendation was to proceed with conservative treatment, including prescriptions for Zanaflax,[5] Mobic,[6] and Ultram. An Electrodiagnostic/EMG report from December 14, 2005 was, essentially, normal, providing no evidence of peripheral neuropathy or lumbosacral radiculopathy (Tr. 256-57). During his course of treatment at Greystone,

---

*Physician's Desk Reference* 2458 (52nd ed. 1998).
  [3]Flexeril is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions." *Physician's Desk Reference* 1455-57 (48th ed. 1994).
  [4]*Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain." *Physician's Desk Reference* 2218 (54th ed. 2000).
  [5]*Zanaflax* "is a short-acting drug for the acute and intermittent management of increased muscle tone associated with spasticity." *Physician's Desk Reference* 3204 (52nd ed. 1998).
  [6]*Mobic* is a nonsteroidal anti-inflammatory drug used for the relief of signs and symptoms of osteoarthritis and rheumatoid

Plaintiff received physical therapy for the first six months (Tr. 224-55), following which Dr. Hakim still noted tenderness across the back though it had improved. Turner was not seen again at Greystone for a year when Dr. Hakim noted that Plaintiff had taken his medication until he ran out of it; he had back tenderness as well as pain radiating into both legs (Tr. 260). The doctor prescribed Lodine[7] and Zanaflax and recommended more physical therapy, including ultrasound and massage, which he underwent between June and November 2007 (Tr. 260, 270-86). On August 15, 2007, Hakim indicated that Turner had reached maximum medical improvement, noting that there was still tenderness in the lumbar area, mostly on the left; he could bend forward, but not touch his toes (Tr. 258). Plaintiff was to continue with Anaprox and Zanaflex and continue exercising at home (*id.*).

On December 3, 2007, Turner was seen by the Rural Health Medical Program (hereinafter *RHMP*) (Tr. 292). Plaintiff stated that he had last taken his blood pressure medication two days earlier; the nurse noted that his hypertension was out of control and cautioned him about not taking his medication (Tr.

---

arthritis. *Physician's Desk Reference* 855-57 (62nd ed. 2008).
   [7]Lodine is "indicated for acute and long-term use in the management of signs and symptoms of osteoarthritis and rheumatoid

292, 288).  The next day, his blood pressure was 140/110 and
noted to be much improved (Tr. 291).

On March 3, 2008, Dr. Huey R. Kidd, D.O., examined Turner
and noted that his blood pressure was 134/78 and that he was
morbidly obese (Tr. 304-05).  Plaintiff had full range of motion
and 5/5 strength in upper and lower extremities; he was unable
to heel or toe walk, squat and stand, and unable to bend to
touch his toes because, he said, it caused him too much pain.
Deep tendon reflexes were 2/4 at the patella and the Achilles.
Kidd's assessment was low back pain with a history of herniated
disc.

On April 15, 2008, Plaintiff was seen at the Tombigbee
Health Clinic for chills, fever, coughing, and shortness of
breath (314-28).  A chest x-ray showed that lungs were clear and
that was heart was within normal limits.

Records from RHMP demonstrate that Turner was seen on
February 14, 2008 for a headache, congestion, and overall
achiness; he had run out of blood pressure medicine the day
before (Tr. 334).  On June 6, 2008, Plaintiff complained of
depression and an inability to sleep for which he was prescribed

---

arthritis.  Lodine is also indicated for the management of pain."
*Physician's Desk Reference* 3062-64 (52nd ed. 1998).

Zoloft[8] (Tr. 333, 335).  Turner was next seen on June 23, 2009
with a toothache and because he had been out of hypertension
medications for a week (Tr. 331).  On September 3, Plaintiff was
seen for sleep apnea and because he was out of hypertension
medications again (Tr. 330).

At the evidentiary hearing, Turner testified that he was
thirty-six years old and that he had a high school education and
a commercial driving license (Tr. 34).  He had worked as a brick
mason and truck driver (Tr. 35-36).  Plaintiff stated that he
was injured years earlier while he was eating when the bar stool
he was sitting on collapsed underneath him (Tr. 37).  He stated
that he had sleep apnea, but did not have the money to get the
necessary study to confirm and treat it; Plaintiff had had the
problem from before his accident and was able to work in spite
of it (Tr. 39-40).  Turner suffered from lower back pain which
radiated into his hips and legs, requiring medication; he has
not always had medications because he did not have the money to
purchase them (Tr. 41-42).  Plaintiff testified that his daily
pain, on a ten-point scale, was 7.5; more than five days a week,
the pain exceeded ten (Tr. 43-44).  Turner stated that his
doctor had made an appointment for him to see a mental health

---

[8]*Zoloft* is "indicated for the treatment of depression."

professional, but that he did not keep the appointment (Tr. 45).

Plaintiff stated that he lived next door to his grandparents and
that they feed him and take care of all of his chores (Tr. 46-
49); he stated that he does not really do much of anything but
try to exercise (Tr. 54). Turner stated that he was able to sit
for up to thirty minutes, stand for five minutes, and walk for
up to ten minutes (Tr. 51-52). Plaintiff has blood pressure
problems; the only time he does not take his hypertension
medication is when he does not have money to purchase it (Tr.
48, 52-53).

A vocational expert (hereinafter *VE*) testified about
Turner's previous jobs and how they were classified; based on a
hypothetical question[9] posed by the ALJ, the VE stated that
Plaintiff would not be able to return to any of his past work

---

*Physician's Desk Reference* 2229-34 (52nd ed. 1998).
        [9]The hypothetical person could "occasionally lift and carry 10
pounds, frequently lift and carry less than 10 pounds, stand or walk
two hours in a normal eight-hour workday. Sit six hours with normal
breaks in an eight-hour workday. No limits with pushing or pulling.
Let's assume someone who when it comes to postural limitations,
someone who should never climb a ladder, ropes or scaffold.
Occasional ramps and stairs. Frequent balancing. Occasional
kneeling, crouching, crawling, stooping. No manipulative limitations.
No visual limitations or communicative limitations. Environmental
limitations, somebody who should avoid concentrated exposure to
extreme cold and heat. Someone who should avoid moderate exposure to
dust. Someone who should avoid moderate exposure to humidity and
wetness. Someone who should avoid moderate exposure to hazardous
machinery. And someone who should avoid all exposure to unprotected
heights" (Tr. 56).

(Tr. 55-56).  When further queried, the VE stated that the
hypothetical person could work as a telephone solicitor, order
clerk, and diet clerk (Tr. 56-57).  The VE also stated that if
Plaintiff's testimony was accepted as totally reliable, he would
be unable to perform any work (Tr. 58).

In his decision, the ALJ summarized the evidence of record
and found that Plaintiff's statements of his limitations and
symptoms were not credible (Tr. 21, 24).  The ALJ discussed
Turner's failure to take his medications regularly and follow
his doctor's recommendations (Tr. 21-22).  The ALJ found that
Plaintiff was not capable of returning to his past work, but
could perform a reduced range of sedentary work; he pointed to
the medical records from Greystone and Dr. Kidd as supporting
his opinions, giving great weight to Dr. Kidd's conclusions (Tr.
25).  The ALJ adopted the opinions of the VE as his own, finding
that there were specific jobs which Turner could perform (Tr.
26-27).

This concludes the medical evidence of record.  The Court
will turn to Plaintiff's claims.

Turner first claims that the ALJ was biased against him
(Doc. 17, pp. 2-4).  In making this assertion, Plaintiff points
to the following specific language in the ALJ's decision:

> The claimant's track record regarding his
> high blood pressure and medical
> noncompliance casts a pall over his
> allegations. I note that he did not testify
> regarding his failure to follow doctor's
> orders. But, even if his testimony were
> true, it is unimaginable to me that a person
> would fail to address a medical condition
> that they find contributes to their
> disability. To go one day more or less an
> entire week without pursuing medication for
> a condition but complain about symptoms of
> the condition—and seek compensation—the
> medication is designed to address is suspect
> at best. However, in this case where the
> claimant has received repeated counseling
> for failure to take his medication as
> directed is a glaring sign that the claimant
> either does not care about his health or is
> more interested in obtaining disability.

(Tr. 22). The Court notes that the Supreme Court has held that

Administrative Law Judges are presumed to be unbiased, though

"[t]his presumption can be rebutted by a showing of conflict of

interest or some other specific reason for disqualification;"

the burden of disqualification falls on the party making the

assertion. *Schweiker v. McClure*, 456 U.S. 188, 195-96 (1982).

The Court finds that the ALJ's comments, while stern, do

not indicate bias. The ALJ informed the Plaintiff that he is,

at least in part, responsible for his uncontrolled hypertension.

The Social Security regulations state that "[i]n order to get

benefits, you must follow treatment prescribed by your physician

if this treatment can restore your ability to work."  20 C.F.R.
1530(a) (2011).  The regulation goes on to state that "[i]f you
do not follow the prescribed treatment without a good reason, we
will not find you disabled or, if you are already receiving
benefits, we will stop paying you benefits."  20 C.F.R. §
404.1530(b) (2011); *see also Dawkins v. Bowen*, 848 F.2d 1211,
1213 (11th Cir. 1988).  Plaintiff's claim of the ALJ's bias is
without merit.

Turner next claims that the ALJ improperly discounted his
testimony (Doc. 17, pp. 4-6).  More specifically, Plaintiff
asserts that the ALJ did not properly consider his claims of
pain.

The standard by which the Plaintiff's complaints of pain
are to be evaluated requires "(1) evidence of an underlying
medical condition and either (2) objective medical evidence that
confirms the severity of the alleged pain arising from that
condition or (3) that the objectively determined medical
condition is of such a severity that it can be reasonably
expected to give rise to the alleged pain."  *Holt v. Sullivan*,
921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*,
782 F.2d 1551, 1553 (11th Cir. 1986)).  The Eleventh Circuit
Court of Appeals has also held that the determination of whether

objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.), *vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Furthermore, the Social Security regulations specifically state the following:

> statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2011).

Though Turner asserts that the ALJ did not set forth reasons for his rejection of his pain testimony, the Court found the following language in his decision:

13

Dr. Kidd diagnosed the claimant with low back pain and a history of herniated disc. I note that Dr. Kidd's examination and report were brief.  However, his limited findings do not support the claimant's allegations of continued limitation. . . . I gave his report great weight.  I previously shared information from the claimant's records with the Uniontown Health Center. The claimant continued to visit that facility and it appears to have been the facility for his primary care.  Although the Uniontown records cover the period of the accident through the month of his hearing I did not find a single note regarding significant back pain.  Reviewing the information chronologically but in reserve [sic], the claimant's last visit was approximately three weeks before the hearing.  The claimant reported, in part, swelling in his feet and legs.  The claimant failed to advise his treating physician that he could not sit, stand or walk, in excess of 10 minutes each.  The claimant did not mention back pain ranging between "7-8" on a scale of zero to ten; [sic] as he would share with me three weeks later.  The claimant did not mention fatigue or shortness of breath on standing or walking. The claimant did not request pain medication in relationship to his back.  Treating personnel did not report any observations of the claimant being acutely distressed.  I find that it is highly unlikely that the claimant would not have shared this information with his primary care provider but share such significant impairment and limitation with me three weeks later.  The claimant is not credible regarding his allegations of limitation.  I also note that he was prescribed Lisinopril and Clonidine during that last visit.  These medications are not for treatment of pain.  They are appropriate for what the claimant alleged

14

ailed him, in part, on that day.

(Tr. 23-24). Though Turner complains that the ALJ failed to
note recent prescriptions from Greystone (Doc. 17, pp. 5-6), the
Court reminds Plaintiff that he did not pursue treatment there
for one year (Tr. 260).[10]  The Court finds that the ALJ has
fairly explained why Plaintiff's claim of debilitating pain and
limitation is not credible.  Turner's claim otherwise is without
merit.

Plaintiff next claims that the ALJ failed to complete a
PRTF or incorporate its analysis into his findings (Doc. 17, pp.
6-7).  Turner notes his depression and corresponding
prescription for Zoloft.  The Court notes that the Eleventh
Circuit Court of Appeals, in *Moore v. Barnhart*, 405 F.3d 1208,
1214 (11th Cir. 2005), held that "where a claimant has presented
a colorable claim of mental impairment, the social security
regulations require the ALJ to complete a PRTF, append it to the
decision, and incorporate its mode of analysis into his findings
and conclusions.  Failure to do so requires remand."

In his decision, the ALJ specifically found that Plaintiff
did not suffer from depression (Tr. 18).  He noted that Turner

_____

[10]In fact, the Court notes that no medical records have been made
available during that period of time, though the alleged disability

15

had never received any mental health treatment, even though a doctor had referred him (*id.*); furthermore, though he received a one-time prescription for medication, no doctor ever rendered a depression diagnosis (Tr. 18). Finally, the ALJ repeatedly noted that Plaintiff, in his initial claim for disability, made no assertions regarding depression (Tr. 20). The Court finds that the ALJ did not err in not completing a PRTF or incorporating its analysis into his findings.

Next, Turner claims that the ALJ made an improper RFC finding (Doc. 17, pp. 7-8). In fleshing out this claim, Plaintiff asserts that the hypothetical question posed to the VE was incomplete. The Eleventh Circuit Court of Appeals has held that an ALJ's failure to include severe impairments suffered by a claimant in a hypothetical question to a vocational expert to be reversible error where the ALJ relied on that expert's testimony in reaching a disability decision. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985).

In his decision, the ALJ discussed the VE's testimony and adopted his opinion about the jobs Plaintiff could perform as his own (Tr. 27). He then stated as follows:

> However, I do note for the sake of the

---

date precedes that gap by about nine months.

record that although I found the claimant's
asthma severe, I did not address fumes,
odors, chemicals, gases, or other pulmonary
irritants when I provided the claimant's
vocational status to the vocational expert.
I visited the Dictionary of Occupational
Titles and researched the abilities needed
and the environments normally associated
with the other jobs the vocational expert
provided to me. I found that like with
dust, which did go before the vocational
expert, none of these occupations presented
a risk to the claimant based on the
claimant's level of asthma impairment.
Accordingly, I find that the vocational
expert's testimony—as well as my own
investigation—indicates that the claimant is
capable of performing the representational
jobs highlighted above.

(Tr. 27). While the ALJ erred in not posing a complete

hypothetical to the VE, he cured that error by making sure that

his ultimate conclusion—that Plaintiff was capable of performing

specified jobs—was supported by the evidence. Though the Court

has not gone to the Dictionary of Occupational Titles to check

behind the ALJ's research, Turner has failed to direct the Court

to any mistakes in the ALJ's conclusion regarding his ability to

work these specified jobs. The ALJ's error was, at most,

harmless.

Plaintiff next claims that the ALJ did not properly

consider his morbid obesity (Doc. 17, pp. 8-9). More

specifically, Turner asserts that the ALJ should have discussed

the effects of his obesity on his ability to work.

The Court notes that the ALJ determined that Turner's obesity was a severe impairment (Tr. 17). He went on to "find that it does not increase the severity of any impairment, real or otherwise, to the point of causing any impairment to meet or equal a listing" (Tr. 19).

The Court notes that Plaintiff's application makes no mention of obesity (Tr. 126-35). In fact, none of the forms indicate that obesity is the reason for Turner's seeking disability (Tr. 141-55). His testimony at the evidentiary hearing was that he weighed 245 pounds while he was working and that he had put on an additional twenty pounds (Tr. 46-47); even so, there was no testimony that his obesity limited his ability to function. Likewise, Plaintiff has directed this Court to nothing in the record in the brief before the Court which explains how his being overweight contributes to his disability. This claim is without merit.

Turner's final claim is that the Appeals Council did not properly consider newly submitted evidence (Doc. 17, pp. 9-10). The record shows that Plaintiff submitted the evidence appearing in the record at pp. 337-401 to the Appeals Council which found that the new evidence provided no basis for changing the ALJ's

decision (Tr. 1).

It should be noted that "[a] reviewing court is limited to [the certified] record [of all of the evidence formally considered by the Secretary] in examining the evidence." *Cherry v. Heckler*, 760 F.2d 1186, 1193 (11th Cir. 1985).  However, "new evidence first submitted to the Appeals Council is part of the administrative record that goes to the district court for review when the Appeals Council accepts the case for review as well as when the Council denies review." *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1067 (11th Cir. 1994).  Under *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1264 (11th Cir. 2007), district courts are instructed to consider, if such a claim is made, whether the Appeals Council properly considered the newly-submitted evidence in light of the ALJ's decision.  To make that determination, the Court considers whether the claimant "establish[ed] that:  (1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level." *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

In examining the action at hand, the Court notes that the Appeals Council denied review of the additional evidence (Tr. 1). The Court further notes that Plaintiff is claiming that the ALJ's decision is not supported by substantial evidence, but also challenges the Appeals Council's decision to deny review of the new evidence (Doc. 17). Therefore, the Court will need to review the new evidence. *Falge*, 150 F.3d at 1324.

The Court notes initially that pages 343-48 duplicates pages 330-35, so there is nothing new to consider therein. As far as the balance of the evidence (Tr. 337-42, 349-401), the Court notes that it all post-dates the ALJ's decision of December 4, 2009 and that although the information therein relates to impairments asserted in this action, there is nothing in that evidence that relates back to the relevant time period. In other words, there is nothing in the new evidence which would indicate that Turner's impairments, at the time they were being considered by the ALJ, rendered him disabled. As such, the Court finds that there is no reason to believe that there is a reasonable probability that this new evidence would change the ALJ's decision. Plaintiff's claim otherwise is without merit.

In summary, Turner has raised six different claims in bringing this action. All are without merit.

Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be entered by separate Order.

DONE this 17th day of November, 2011.


<u>s/BERT W. MILLING, JR.</u>
UNITED STATES MAGISTRATE JUDGE